UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANA ADAMS, | : | CIVIL CASE NO. |
|     Petitioner, | : | 3:14-CV-655 (JCH) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | JUNE 2, 2015 |
|     Respondent. | : | |

**RULING RE: MOTION TO VACATE, SET ASIDE, OR
CORRECT SENTENCE (Doc. No. 1)**

## I.    INTRODUCTION

Petitioner Dana Adams filed this Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) seeking to have the court modify his sentence[1] based on allegations that: (1) his counsel was ineffective; (2) he did not plead guilty knowingly and intelligently; (3) the government should have moved for a downward departure; and (4) the court erred in applying a three-level enhancement for managerial or supervisory role in its guidelines calculation at sentencing. The government opposes Adams's Motion, asserting that Adams waived his right to collaterally attack his conviction and sentence and that, even if he did not, his claims are without merit. See United States' Response to Petitioner's Pro Se Motion Pursuant to 28 U.S.C. § 2255 (Doc. No. 6) ("Gov't's Resp.").

For the following reasons, the court denies Adams's Motion.

## II.    BACKGROUND

Adams pleaded guilty to conspiracy to distribute and to possess with intent to distribute 280 grams or more of cocaine base. See Plea Agreement, United States v.

---

[1] Adams states that his "Motion is not to vacate sentence, it is to correct and seek relief." Adams's Reply to Government's Response ("Pet'r's Reply") (Doc. No. 10).

1

Adams, 3:12-CR-90 (D. Conn. Nov. 6, 2012) (Doc. No. 401).  In the Plea Agreement, the parties agreed on the guidelines calculation:  a base offense level of 32 with three levels added for Adams's role as a manager or supervisor of a criminal activity involving five or more participants and three levels subtracted for acceptance of responsibility, resulting in a total offense level of 32.  Id. at 4.  The parties also agreed that, based on their initial assessment, Adams fell within Criminal History Category IV.  Id.  The parties further agreed that this calculation yielded a guideline range of 168 to 210 months.  Id.  The parties acknowledged that the defendant may have been eligible for a sentencing enhancement because of his prior conviction on a felony drug offense under sections 841(b)(1)(A) and 851 of title 21 of the United Stated Code, but the government agreed not to file an information under section 851 so that Adams would not be exposed to the increased penalties.  See id. at 5.

> In the Plea Agreement, Adams also agreed
>
> not to appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence imposed by the Court if that sentence does not exceed **210** months' imprisonment, a life-term of supervised release and a $50,000 fine, even if the Court imposes such a sentence based on an analysis different from that specified above.

Id. at 5 (emphasis in original).  Adams acknowledged that he was "knowingly and intelligently waiving these rights."  Id.

The court subsequently sentenced Adams to 138 months' imprisonment and a five-year term of supervised release for the offense to which he pleaded guilty.  See Judgment, United States v. Adams, 3:12-CR-90 (D. Conn. Feb. 5, 2013) (Doc. No. 598).

## III. STANDARD

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir.1995) (internal citation omitted), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002).  "As a general rule, relief is available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (internal citations and quotation marks omitted).

In a section 2255 motion, the burden is on the petitioner to prove his entitlement to relief by preponderance of the evidence.  See Napoli v. United States, 45 F.3d 680, 683 (2d Cir.1995).  Because Adams proceeds pro se, the court must read his "submissions broadly so as to determine whether they raise any colorable legal claims." Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008) (citing Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 145–46 (2d Cir. 2002)).

In deciding a section 2255 motion, the court must hold a hearing, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  However, a petitioner is not automatically entitled to a hearing, and no hearing is required where a petitioner's "allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). "The procedure for determining whether a hearing is necessary is in part analogous to,

but in part different from, a summary judgment proceeding." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." Gonzalez, 722 F.3d at 131.

## IV.  DISCUSSION

Adams asserts that: (1) his counsel was ineffective in a number of respects; (2) his plea agreement is invalid; (3) the court erred in applying a three-level guidelines enhancement for managerial role; and (4) he should have received a downward departure for his substantial assistance. See Mot. Vacate ¶ 14; Pet'r's Reply. The government responds that Adams waived his right to collaterally attack his sentence and that, even if he did not, his claims fail. The court agrees with the government.

### A.  Waiver

Adams waived his right to collaterally attack his sentence and conviction. A waiver of the right to collaterally attack a conviction or sentence is valid if and only if the record clearly demonstrates that the waiver was both knowing and voluntary. See United States v. Monzon, 359 F.3d 110, 116–17 (2d Cir. 2004) (stating this standard in the context of waivers of the right to appeal a sentence); Cherry v. United States, No. 3:12-CV-1526 JCH, 2013 WL 2456556, at *2–*3 (D. Conn. June 6, 2013) (applying this standard to a waiver of the right to collaterally attack a sentence).

The record clearly shows that Adams's waiver of his appeal and collateral attack rights was knowing and voluntary. In the Plea Agreement, Adams agreed not to appeal or collaterally attack his sentence or conviction so long as the sentence did not exceed

210 months' imprisonment, a life-term of supervised release, and a $50,000 fine.  See Plea Agreement 5.  The Plea Agreement specifically states that Adams "knowingly and intelligently" waived his appeal and collateral attack rights.  Id.  The plea colloquy confirms that Adams understood and agreed to the consequences of this waiver.  See Transcript of Change of Plea, United States v. Adams, 3:12-CR-90 (D. Conn. Nov. 6, 2012) (Doc. No. 891), at 10–11.  After confirming his understanding, see id., Adams signed the Plea Agreement and affirmed that no one forced him to do so.  See id. at 25.  The court then found "that the Plea Agreement ha[d] been knowingly and voluntarily entered into."  Id.

Adams now disputes his understanding of the Plea Agreement, but his assertions are belied by text of that Agreement and the statements he made in the plea colloquy.  Adams also mentions that, "[d]uring the sentencing phase," the court "reinstate[d] [his] appeal rights."  See Pet'r's Reply 5.  The court understands Adams to be referring to statements made at the conclusion of his sentencing proceeding in which the court explained that, if he chooses to file an appeal, he must do so within 14 days.  See Transcript of Sentencing Hearing ("Sent'g Tr."), United States v. Adams, 3:12-CR-90 (D. Conn. Jan. 31, 2013) (Doc. No. 919), at 37.[2]  The court explained this to Adams only after stating that, in its view, Adams had waived the right to appeal.  See id.  Moreover, Adams currently seeks to assert his right to collaterally attack his sentence, not to appeal it, and he makes no argument that the court reinstated his right to mount such an attack.  Because the record makes clear that Adams knowingly and voluntarily

---

[2] Adams may also be referring to the court's statement that he had a right to appeal a sentence on a supervised release violation, which the court addressed at the same proceeding.  See Sent'g Tr. 44–45.

waived his right to collaterally attack his conviction and sentence, the court denies Adams's Motion.[3]

B. <u>Merits</u>

Even if Adams had not waived his collateral attack right, his habeas petition would still fail. Aside from contesting the validity of the waiver of his collateral attack right, Adams argues that his counsel was ineffective, that the court erred in applying a guidelines enhancement, and that the government should have moved for a downward departure.

1. Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." <u>Harrington v. United States</u>, 689 F.3d 124, 129 (2d Cir. 2012) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687–88 (1984)). The Second Circuit has

---

[3] Adams states that the plea bargain process was spoiled as a "direct result of trial counsel's ineffectiveness during the plea process." <u>See</u> Mot. Vacate 4. However, in the subsequent filing in which he explains his arguments, he does not indicate how his counsel was ineffective in the plea bargaining process or how such alleged ineffectiveness influenced the outcome.
    The right to challenge a sentence or conviction based on ineffective assistance of counsel cannot be waived where the ineffective assistance related to the "process by which the plea agreement was consummated." <u>See</u> <u>United States v. Hernandez</u>, 242 F.3d 110, 113–14 (2d Cir. 2001) ("We have suggested that a plea agreement containing a waiver of the right to appeal is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel."). However, ineffective assistance of counsel claims arising out of conduct unrelated to that process are waivable. <u>See</u> <u>Garcia-Santos v. United States</u>, 273 F.3d 506, 509 (2d Cir. 2001) (upholding a waiver of the right to collaterally attack a sentence where petitioner's attack was based, in part, on alleged ineffective assistance of counsel related to the petitioner's sentencing); <u>see also</u> <u>United States v. Cockerham</u>, 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver. Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable.").
    Because Adams does not explain how his counsel was ineffective in the plea bargaining process, his ineffective assistance claims are waived along with the rest of his claims. Despite this waiver, the court considers – and rejects – the merits of Adams's claims in Part B, <u>infra</u>.

described the burden as "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. (citations and internal quotation marks omitted).  "The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" Id. at 129–30 (quoting Harrington v. Richter, 562 U.S. 86, 88 (2011)).

To show the requisite prejudice at the second step, a petitioner must show "a reasonable probability that his reliance on counsel's ineffective assistance affected the outcome of the proceedings." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Even if Adams could show deficient performance, he cannot show prejudice.  He generally asserts that certain evidence was not sent to him and that his lawyer, after agreeing to challenge the drug quantity, failed to file a motion making such a challenge.  See Pet'r's Reply 2.  He also alleges that his lawyer insufficiently researched the history of the case.  See id. at 2–3.  However, Adams does not explain how any of these alleged deficiencies would have changed the outcome of the proceeding.  Regarding the unsent evidence, Adams does not state when he was meant to have received this evidence, what the evidence related to, or how it would have had any bearing on the outcome of the proceeding.  Adams's allegation about his lawyer's failure to file a motion contesting the relevant drug quantity does nothing to show prejudice because Adams stipulated to quantity in the plea agreement.  See Plea Agreement 4.  Finally,

beyond mere speculation, there is no reason to think that Adams's counsel's failure to know that Adams had previously been represented by another lawyer would affect the outcome of the proceeding.

### 2. Enhancement for Supervisory or Managerial Role

Adams claims that the court should not have applied a sentencing enhancement for Adams's managerial or supervisory role in the offense.  Specifically, he argues that he was not the "ring leader" of the criminal activity, see Mot. Vacate 5, but rather a distributor, see Pet'r's Reply 6.  However, section 3B1.1(b) of the United States Sentencing Guidelines states that a defendant's offense level increases by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."  The record confirms that Adams was such an individual.  In the Plea Agreement, the parties agreed that three levels would be added under section 3B1.1 of the Guidelines for Adams's role as a manager or supervisor of a criminal activity involving five or more participants.  Plea Agreement 4.  The Presentence Investigation Report, which the court adopted absent objection, listed a number of other participants involved in the criminal activity and described how Adams had used lower level drug dealers.  See Presentence Investigation Report, United States v. Adams, 3:12-CR-90 (D. Conn. Nov. 6, 2012) (Doc. No. 501), ¶¶ 12–13, 18; Sent'g Tr. 7 (adopting factual findings).  Contrary to Adams's arguments, one need not be a "ring leader" to receive a sentencing enhancement under section 3B1.1(b) of the Sentencing Guidelines.

### 3. Departure for Substantial Assistance

Finally, Adams asserts that the "government breached its agreement with him" by not giving him "the benefit of a [5K1.1] downward departure." Mot. Vacate 4. Generally, a prosecutor's decision whether or not to file a motion for downward departure is "not subject to judicial review at all." United States v. Rexach, 896 F.2d 710, 713–14 (2d Cir. 1990). Without an operative cooperation agreement, the district court "may not inquire into the government's failure to make a motion unless there is a substantial threshold showing of an unconstitutional motive." United States v. Morgan, 386 F.3d 376, 382 (2d Cir. 2004). If there is a cooperation agreement that leaves the filing of such a motion in the government's discretion, the court limits its review to whether the prosecutor determined not to file the motion in good faith, i.e., whether the government was honestly dissatisfied with the defendant's cooperation. See United States v. Tarbell, 728 F.3d 122, 128 (2d Cir. 2013).

The Plea Agreement does not contain anything related to a 5K1.1 motion for downward departure, and it states that Adams's acknowledged that no other promises had been made. See Plea Agreement 8. The government explains that it accidently disclosed some of Adams's inculpatory statements to co-defendants in the case, and it therefore agreed to allow Adams to advocate for a below-guideline sentence – something the Plea Agreement did not contemplate. See Gov't's Resp. 10. Indeed, this caused the court to moderate its sentence. See Sent'g Tr. 36. Nevertheless, the government stated on the record that Adams's statements did not amount to substantial assistance because they lead to no arrests and because Adams had already received a favorable sentence in another case for his cooperation. See id. at 14–19. While Adams

believes he provided substantial cooperation, he provides no evidence that the government promised to file a motion for downward departure (in a cooperation agreement or otherwise) or that it acted outside of its wide discretion in declining to file such a motion. In other words, he makes neither a showing of a cooperation agreement and a bad faith decision not to file the motion nor a substantial threshold showing of an unconstitutional motivation to not file the motion. See Morgan, 386 F.2d at 382; Tarbell 728 F.3d at 128 & nn.6–7. Therefore, Adams's claim is without merit.[4]

## V. CONCLUSION

For the foregoing reasons, the court **DENIES** Adams's Vacate, Set Aside, or Correct Sentence (Doc. No. 1). Because the petitioner has not made a "substantial showing" of a denial of a constitutional right, a certificate of appealablilty will not issue. 28 U.S.C. § 2253(c)(2).

---

[4] Although the government did not raise the issue, the court notes that, aside from ineffective assistance of counsel, Adams's claims are likely procedurally defaulted. Cf. Acosta v. Artuz, 221 F.3d 117, 122 (2d Cir. 2000) (holding that district courts may raise the untimeliness of a section 2254 habeas petition sua sponte and approvingly citing Hines v. United States, 971 F.2d 506 (10th Cir. 1992), which held that district courts may sua sponte raise the issue of failure to file a direct appeal in section 2255 cases). Because a "motion under section 2255 is not a substitute for an appeal," United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998), a petitioner generally must have raised a claim on appeal before doing so in a habeas petition. Zhang v. United States, 506 F.3d 162,166 (2d Cir. 2007). If the petitioner did not raise the claim on a direct appeal, such a claim is procedurally defaulted unless the petitioner establishes either "(1) cause for the failure to bring a direct appeal and actual prejudice from the alleged violations; or (2) actual innocence." Id. Adams has shown neither in his filings. However, the court does not rely on this as a ground for dismissing any part of the petition because the claims are easily dealt with and because Adams has not had the opportunity to respond to the issue. See Kuhali v. Reno, 266 F.3d 93, 101 (2d Cir. 2001) ("[T]he doctrine of procedural default is prudential rather than jurisdictional in nature."); Hines, 971 F.2d at 509 ("[I]f a court elects to raise a defense sua sponte, the court must generally afford the movant an opportunity to respond to the defense").

**SO ORDERED.**

Dated at New Haven, Connecticut, this 2nd day of June, 2015.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge